Peter J. Torcicollo
J. Brugh Lower
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102
Tel: (973) 596-4500
Fax: (973) 596-0545

Gregory D. Phillips (*pro hac vice* forthcoming)
**PHILLIPS RYTHER & WINCHESTER**
124 S 600 E
Salt Lake City, Utah 84102
Tel: (801) 935-4935
Fax: (801) 935-4936

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| AUDI AG; BENTLEY MOTORS LIMITED; AUTOMOBILI LAMBORGHINI S.P.A.; and VOLKSWAGEN GROUP OF AMERICA, INC., | Civil Action No. 18-14254 |
| Plaintiffs, | *Document Electronically Filed* |
| vs. | |
| POSH CLOTHING, LLC d/b/a CLUB FOREIGN, TRENDS SOCIETY and TRENDSSOCIETY.COM; PASHA BORSUK; and NICKWON ARVINGER, | |
| Defendants. | |

**VERIFIED COMPLAINT FOR TRADEMARK COUNTERFEITING AND
INFRINGEMENT, FALSE DESIGNATION OF ORIGIN,
<u>AND TRADEMARK DILUTION</u>**

Plaintiffs Audi AG, Bentley Motors Limited, Automobili Lamborghini S.p.A., and

Volkswagen Group of America, Inc. (collectively "Plaintiffs") for their complaint against

defendants Posh Clothing, LLC doing business as Club Foreign, Trends Society and Trendssociety.com,  Pasha Borsuk, and Nickwon Arvinger (collectively "Defendants"), allege as follows:

## SUBSTANCE OF THE ACTION

1.      This suit arises from Defendants' unauthorized misappropriation and counterfeiting of Plaintiffs' distinctive and world-famous trademarks.   Defendants feature Plaintiffs' trademarks in nearly all of their advertisements, on their website, and on the counterfeit goods they manufacture, and/or import and sell in the United States to convey the false impression that Defendants are associated or affiliated with Plaintiffs.

2.      This is an action for trademark counterfeiting, infringement, and dilution of Plaintiffs' federally-registered trademarks, and for related claims.   Defendants operate a counterfeiting ring that imports, promotes, advertises, distributes, and/or sells apparel and personal accessories bearing counterfeits of Plaintiffs' world-famous trademarks, including, but not limited to, the AUDI RINGS®, AUDI STYLIZED®, the BENTLEY B IN WINGS®, and the LAMBORGHINI CHARGING BULL CREST® design trademarks, as illustrated by the table below:



| Defendants' Counterfeit Products | Plaintiffs' Trademarks |
|---|---|
| Formerly on Defendants' website at: | Compare to U.S. Reg. No. 2,987,328 (Class 25: Apparel namely, knit shirts, golf shirts, polo shirts, jackets.) |

| Defendants' Counterfeit Products | Plaintiffs' Trademarks |
|---|---|
| https://trendssociety.com/collections/racing-jackets/products/club-foreign-racing-bomber-jacket-rings-yellow (last visited 02/15/2018) | <br>Compare to U.S. Reg. No. 1,416,583<br>(Class 25: Jackets, Hats) |
| <br>Formerly on Defendants' website at:<br>https://trendssociety.com/collections/racing-jackets/products/club-foreign-pu-leather-racing-jacket-black (last visited 02/15/2018) | <br>Compare to U.S. Reg. No. 2,987,328<br>(Class 25: Apparel namely, knit shirts, golf shirts, polo shirts, jackets.)<br><br><br>Compare to U.S. Reg. No. 1,416,583<br>(Class 25: Jackets, Hats) |
| <br>Formerly on Defendants' website at:<br>https://trendssociety.com/collections/hats/products/clubforeign-logo-hat-rings-pick-your-color<br>(last visited 02/15/2018) | <br>Compare to U.S. Reg. No. 2,987,328<br>(Class 25: Apparel namely, knit shirts, golf shirts, polo shirts, jackets.)<br><br><br>Compare to U.S. Reg. No. 1,416,583<br>(Class 25: Jackets, Hats) |

| Defendants' Counterfeit Products | Plaintiffs' Trademarks |
|---|---|
|  Formerly on Defendants' website at: https://trendssociety.com/collections/t-shirts/products/clubforeign-t-shirt-germany-series (last visited 02/15/2018) |  Compare to U.S. Reg. No. 2,987,328 (Class 25: Apparel namely, knit shirts, golf shirts, polo shirts, jackets.)  Compare to U.S. Reg. No. 1,416,583 (Class 25: Jackets, Hats) |
|  CLUB FOREIGN LIGHTWEIGHT RACING BOMBER JACKET "LAMBO" On Defendants' facebook.com page at: https://www.facebook.com/trendsSocietyClothing/photos/a.992397904199447.1073741828.992303737542197/1343624105743490/?type=3&theater (last visited August 2, 2018) |  Compare to U.S. Reg. No. 3,717,346 (Class 25: …jackets, coats, vests, anoraks…) |

4

| Defendants' Counterfeit Products | Plaintiffs' Trademarks |
|---|---|
|  On Defendants' Instagram page at: https://www.instagram.com/p/BdtAbtXltJx/?tagged= clubforeign (last visited 08/02/2018) |  Compare to U.S. Reg. No. 3,717,346 (Class 25: …jackets, coats, vests, anoraks…) |

| Defendants' Counterfeit Products | Plaintiffs' Trademarks |
|---|---|
| <br>On Defendants' Instagram.com page at: https://www.instagram.com/p/BfJ2gNuBBUK/?tagged=clubforeign (last visited 08/02/2018) | <br><br>Compare to U.S. Reg. No. 5,121,498 (Class 25: Articles of clothing … jackets, … vests; coats; jackets; waterproof coats; waterproof jackets…) |



May 4, 2017 image of Defendant, Pasha Borsuk, wearing his apparel with counterfeit Audi Marks, viewable online at: https://www.instagram.com/p/BTsRnsqAQpe/?tagged=clubforeign (last visited August 2, 2018)



December 5, 2017 image of Defendant, Pasha Borsuk, wearing his apparel with counterfeit Audi Marks, viewable online at: https://www.facebook.com/trendsSocietyClothing/photos/a.992397904199447.1073741828.992303737542197/1307570449348856/?type=3&theater (last visited August 2, 2018)

3.    Plaintiffs allege claims for federal trademark counterfeiting and infringement, false designation of origin or sponsorship, and federal trademark dilution under Sections 32(1), 43(c), and 43(a) of the United States Trademark Act of 1946, as amended by the Trademark Counterfeiting Act of 1984 (15 U.S.C § 1116(d)), 15 U.S.C. §§ 1114(1), 1125(a), and 1125(c), (the "Lanham Act").    Plaintiffs seek preliminary and permanent injunctions enjoining Defendants from using Plaintiffs' trademarks, and counterfeits thereof, and an order requiring Defendants to deliver all counterfeit and infringing goods and the means for manufacturing them for destruction, identifying information for the suppliers or manufacturers of said counterfeit goods, an equitable accounting, an equitable disgorgement of all revenues and/or profits wrongfully obtained, statutory damages, exemplary damages, as well as attorneys' fees and costs.

## THE PARTIES

4.    Audi AG is a corporation organized under the laws of Germany with its principal place of business in Ingolstadt, Germany and is a wholly owned subsidiary of Volkswagen AG.

5.    Bentley Motors Limited is a corporation organized under the laws of the United Kingdom with its principal place of business in Crewe, England and is a wholly owned subsidiary of Volkswagen AG.

6.    Automobili Lamborghini S.p.A. is a corporation organized under the laws of Italy with its principal place of business in Bologna, Italy and is a wholly owned subsidiary of Audi AG.

7.    Volkswagen Group of America, Inc. is a New Jersey corporation with its principal place of business in Herndon, Virginia and is a wholly owned subsidiary of Volkswagen AG.

8.      Defendant Posh Clothing, LLC is a New Jersey LLC with its principal place of business located at 84 Hillside Ave, Springfield, New Jersey 07081.  Plaintiffs are informed and believe that Posh Clothing, LLC also does business as Trends Society, Trendssociety.com, and Club Foreign.

9.      Defendant Pasha Borsuk is an individual and principal of Posh Clothing, LLC, and is a moving, conscious, and active force behind the infringing acts, and actively participated in and approved the acts of infringement.  Plaintiffs are informed and believe that defendant Pasha Borsuk resides in or near Springfield, New Jersey.

10.     Defendant Nickwon Arvinger is an individual and principal of Posh Clothing, LLC, and is a moving, conscious, and active force behind the infringing acts, and actively participated in and approved the acts of infringement.  Plaintiffs are informed and believe that defendant Nickwon Arvinger resides in or near Jersey City, New Jersey.

11.     Plaintiffs are informed and believe, and therefore allege, that each Defendant was the agent, employee, partner, and/or joint venturer of each of the other Defendants, and in committing the acts alleged herein, was acting within the course and scope of that relationship and with permission and consent of the other Defendants, and they have acted in concert with each other in connection with the allegations herein.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction pursuant to:

(a)     The International Convention for the Protection of Industrial Property, 13 U.S. Treaties and Other International Agreements (1962), implemented by Sections 39 and 44 of the Lanham Act, 15 U.S.C. §§ 1121 and 1126, and by the Judicial Code, 28 U.S.C. § 1331;

(b)    Section 39 of the Lanham Act, 15 U.S.C. § 1121, giving this Court jurisdiction over all actions arising under the Lanham Act without regard to the amount in controversy;

(c)    Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), relating to the counterfeit, reproduction, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of goods;

(d)    Section 43(a) of the Lanham Act, 15 U.S.C. Section 1125(a), relating to the use of false designations of origin and/or sponsorship tending falsely to describe or designate the source, and/or sponsorship of goods affecting commerce, and relating to false advertising and trade dress infringement and dilution;

(e)    Sections 43(c) of the Lanham Act, 15 U.S.C., §§1125(c), relating to dilution;

(f)    The Judicial Code, 28 U.S.C. § 1338(b), relating to claims of unfair competition "joined with a substantial and related claim under the ... trademark laws;" and

(g)    The Judicial Code, 28 U.S.C. § 1331, relating to federal question jurisdiction.

13.    Venue is proper under 28 U.S.C. § 1391(b) given that a substantial part of the events giving rise to the claims occurred in this District and because Defendants may be found here.

## GENERAL ALLEGATIONS

### *Audi's Trademark Rights*

14.    Audi is a world-famous automobile manufacturer that sells Audi automobiles, genuine parts, accessories, and various consumer goods through a network of licensed Audi dealerships. In addition to the physical dealerships operated by its licensees, Audi operates

websites, including *audiusa.com* and *audicollectionusa.com*, through which consumers can purchase genuine Audi branded consumer goods and accessories directly from Audi. Audi's world-famous and distinctive trademarks are arbitrary and strong and symbolize the Audi brand and its reputation and goodwill.

15.     Audi obtained its first U.S. registration for AUDI® in 1960 (U.S. Reg. No. 0,708,352), now incontestable, and has subsequently obtained additional registrations for that mark. A true and correct copy of the registration certificate for Audi's first registration of AUDI® is attached to the Verified Complaint as Exhibit A. A table of Audi's U.S. trademark registrations for AUDI® and marks that include AUDI® is attached to the Verified Complaint as Exhibit B.

16.     Audi obtained its first U.S. registration for the AUDI RINGS® in 1971 (U.S. Reg. No. 0,906,525), now incontestable, and has subsequently obtained additional registrations for that mark. A true and correct copy of Audi's first AUDI RINGS® trademark is attached to the Verified Complaint as Exhibit C. A table including all of Audi's live registrations for the AUDI RINGS® and trademarks that include the AUDI RINGS® is attached to the Verified Complaint as Exhibit D. Audi's registrations for the AUDI RINGS® marks are valid, unrevoked, subsisting, and incontestable, and constitute *prima facie* evidence of Audi's exclusive ownership of the AUDI RINGS® marks.

17.     An image depicting Audi's AUDI STYLIZED® (U.S. Reg. No. 1,416,583) trademark (covering jackets and hats) is displayed below:



18.    An image depicting Audi's AUDI RINGS® (U.S. Reg. No. 3,007,305) (covering caps, sweatshirts, t-shirts and jackets) as currently used by Audi is displayed below:



19.    An image of Audi's AUDI RINGS® (U.S. Reg. No. 2,987,328) (covering shirts and jackets) as currently used by Audi is displayed below for reference:



20.    Audi has further obtained U.S. registration certificates for other related trademarks, including without limitation ◢ Audi Sport ® (U.S. Reg. No. 5,174,144) (covering t-shirts, … pajamas, … trousers, out-door trousers, jackets, out-door jackets), ◢S ® (U.S. Reg. No. 4,405,143) (covering t-shirts, shirts, polo shirts, jackets, caps and hats), and others, many of which are now incontestable and cover apparel.  Registration certificates for Audi Sport and S trademarks are attached to the Verified Complaint as Exhibits E and F.

21.    Audi uses the above-referenced trademarks (collectively the "Audi Marks") to identify the genuine consumer goods it sells, including apparel of various types.    Defendants' counterfeit apparel competes directly with Audi's genuine goods.  Images of advertisements for genuine Audi goods are shown in the table below:





Audi's Space Dye Heather Jersey Cap, available at:
http://audicollectionusa.com/Product/ACM4475.htm

Audi's "Four Rings Logo Tee – Mens" available at:
http://audicollectionusa.com/Product/ACM3030.htm





Audi's "Vacation Sweatshirt – Mens" available at:
http://audicollectionusa.com/Product/ACM2341.htm

"Audi R8 LMS GT3 Tee" available at:
http://audicollectionusa.com/Product/ACM3026.htm





Audi's "Multi Stripe Toque" knit cap, available at:
http://audicollectionusa.com/Product/ACM4413.htm

| | Audi Collection "Roots73 Martinriver Jacket – Mens", available at: http://audicollectionusa.com/Product/ACM2300.htm |
|---|---|
|  Audi Collection "Flight Jacket – Mens", available at: http://audicollectionusa.com/Product/ACM2494.htm |  "Audi Sport All Season Pullover – Mens", available at: http://audicollectionusa.com/Product/Audi-Sport-All-Season-Pullover---Mens-ACM2034-154506.htm |

***Bentley's Trademark Rights***

22.    Bentley Motors Limited is a world-famous automobile manufacturer that sells Bentley automobiles, parts, accessories and a variety of consumer goods through a network of licensed Bentley dealerships.   Bentley also operates websites, including *bentleymotors.com*, through which consumers can purchase Bentley parts, accessories, and personal goods directly from Bentley.   At the core of Bentley is its world-famous, arbitrary, distinctive and strong B IN WINGS® brand.

23.    Bentley obtained its first U.S. registration for B IN WINGS® in 1937 (U.S. Reg. No. 0,344,524), now incontestable, and has subsequently obtained many additional registrations

14

for that mark.  An image depicting the first B IN WINGS® trademark registered by Bentley is depicted below:



A true and correct copy of the registration certificate for Bentley's first registration of B IN WINGS® is attached to the Verified Complaint as Exhibit G.  A table of Bentley's U.S. trademark registrations for B IN WINGS® trademarks is attached to the Verified Complaint as Exhibit H.

24.   Bentley's registrations for the B IN WINGS® marks are valid, unrevoked, subsisting, and most are incontestable, and constitute *prima facie* evidence of Bentley's exclusive ownership of the B IN WINGS® marks.

25.   An image depicting Bentley's B IN WINGS® as currently used on consumer goods (U.S. Reg. No. 5,121,498) trademark (covering jackets) is displayed below:



26.   Bentley uses the above-referenced trademarks (collectively the "Bentley Marks") to identify the genuine consumer goods it sells, including apparel of various types.   Defendants' counterfeit apparel competes directly with Bentley's genuine goods.  Images of advertisements for genuine Bentley goods compared to Defendants' counterfeit goods bearing Bentley's trademarks are shown in the table below:

| Genuine Bentley Branded Goods | |
|---|---|
| <br>Bentley's "Motorsport Spray Jacket", available at: https://shop.bentleymotors.com/collections/for-him/products/motorsport-softshell-spray-jacket (last visited June 19, 2018). | <br>Bentley's "Motorsports Softshell Jacket", viewable online at: https://shop.bentleymotors.com/collections/for-him/products/motorsport-softshell-jacket (last visited June 19, 2018). |

***Lamborghini's Trademark Rights***

27.     Automobili Lamborghini S.p.A. is a world-famous automobile manufacturer that sells Lamborghini automobiles, parts, accessories and a variety of consumer goods, including apparel, through a network of licensed Lamborghini dealerships.  Lamborghini also operates websites, including *lamborghinistore.com*, through which consumers can purchase Lamborghini branded consumer goods, including without limitation, apparel, directly from Lamborghini.  At the core of Lamborghini is its world-famous, arbitrary, distinctive and strong LAMBORGHINI CHARGING BULL CREST® brand.

28.     Lamborghini obtained its first U.S. registration for LAMBORGHINI CHARGING BULL CREST® in 1975 (U.S. Reg. No. 1,011,869), now abandoned, and has subsequently obtained many additional registrations for the LAMBORGHINI CHARGING BULL CREST®.    An image depicting the oldest LAMBORGHINI CHARGING BULL CREST® trademark currently registered by Lamborghini is depicted below:



A true and correct copy of the registration certificate for Lamborghini's first registration of LAMBORGHINI CHARGING BULL CREST® is attached to the Verified Complaint as Exhibit I.    A table of Lamborghini's U.S. trademark registrations for LAMBORGHINI CHARGING BULL CREST® trademarks are attached to the Verified Complaint as Exhibit J.

29.     Lamborghini's current registrations for the LAMBORGHINI CHARGING BULL CREST® marks are valid, unrevoked, subsisting, and most are incontestable, and constitute *prima facie* evidence of Lamborghini's exclusive ownership of the LAMBORGHINI CHARGING BULL CREST® marks.

30.     An image depicting Lamborghini's AUTOMOBILII LAMBORGHINI CHARGING BULL CREST® as currently used on consumer goods (U.S. Reg. No. 3,717,346) (covering jackets) is displayed below:



31. Lamborghini uses the above-referenced trademarks (collectively the "Lamborghini Marks") to identify the genuine consumer goods it sells, including apparel of various types. Defendants' counterfeit apparel competes directly with Bentley's genuine goods. Images of advertisements for genuine Lamborghini goods are shown in the table below:

| Genuine Lamborghini Branded Goods | |
| --- | --- |
|  |  |
| "Lamborghini Zip-Up Sweatshirt", available at: http://www.lamborghinistore.com/us/lamborghini-zip-up-sweatshirt.html (last visited June 18, 2018) | "Lamborghini Pilota Ufficiale Zip-Up Sweatshirt", available at: http://www.lamborghinistore.com/us/lamborghini-pilota-ufficiale-zip-up-sweatshirt-9434.html (last visited June 18, 2018). |

32. Plaintiffs use the above-referenced trademarks (collectively the "Plaintiffs' Marks") to identify their goods, including without limitation, apparel.

33.    Plaintiffs have each spent hundreds of millions of dollars and have expended significant effort in advertising, promoting, and developing their trademarks throughout the world.  As a result of such advertising and expenditures, Plaintiffs' Marks have become widely known and recognized throughout the world as symbols of high quality automotive goods and services that are made by Plaintiffs.  Plaintiffs' Marks are invaluable assets of substantial and inestimable worth to Plaintiffs.

### *Defendants' Violations of Plaintiffs' Marks*

34.    Long after Plaintiffs' Marks had attained renown, and without Plaintiffs' consent, Defendants began selling apparel bearing counterfeits of Plaintiffs' Marks.  As illustrated by the images in the tables above, Defendants have imported, manufactured, advertised, and sold apparel that incorporates counterfeits, copies, and/or colorable imitations of Plaintiffs' Marks on identical goods sold by Plaintiffs' under those marks.

35.    Defendants' counterfeiting and infringement of Plaintiffs' Marks is knowing and willful.  Indeed, on March 18, 2017, counsel for Defendants, Cassandra Spangler, sent an email to Susan Flohr, licensing attorney for Audi AG, requesting information regarding the application process for obtaining a products license from Audi AG.  On March 23, 2017, Audi AG sent back an email questionnaire, asking Defendants to fill out the same as the first step in the licensing process.  Defendants never received a license from Audi AG.

36.    On February 26, 2018, Plaintiffs sent Defendants a cease and desist letter informing them of their infringement and demanding that they deliver all infringing goods to Plaintiffs for destruction and pay damages.  Defendants refused to do so.

37.    Since then, Plaintiffs have contacted Defendants via letter, email, and telephone to attempt to reach an amicable resolution of their infringement, and have been discussing an

amicable resolution with Defendants.  Defendants have refused to cooperate with Plaintiffs' demands and have refused to settle this matter amicably.  Defendants continue to knowingly and willfully manufacture, import, and/or sell apparel incorporating counterfeits of Plaintiffs' Marks.

38.    Defendants use e-commerce websites, social media websites like facebook.com and Instagram.com and commercial reseller websites like Jeffersons Apparel to advertise and sell their counterfeit goods to consumers online.  Moreover, Defendants advertise their products online using Plaintiffs' Marks to identify their counterfeit goods with confusing language, such as, for example, "Club Foreign Jacket Bentley Red" to convey the false impression that their counterfeit goods are manufactured or licensed by Plaintiffs.

39.    On May 21, 2018, Plaintiffs contacted defendant Pasha Borsuk regarding the goods being displayed on Defendants' website and social media pages that were being advertised for sale.  Defendant Pasha Borsuk denied that any of his goods branded with counterfeits of Plaintiffs' trademarks had been sold and that all images displayed on Defendants' website and social media pages were merely samples and were never for sale.

40.    The table below compares Defendants' counterfeit, knockoff goods with genuine goods manufactured by Plaintiffs:

| Plaintiffs' Genuine Goods | Defendants' Competing Knockoff Goods |
|---|---|
|  Audi's "Multi Stripe Toque" knit cap, available at: http://audicollectionusa.com /Product/ACM4413.htm | Defendants' counterfeit AUDI RINGS® branded knit cap, viewable online at: https://www.facebook.com/search/str/%E2%80% AA%23%E2%80%8EClubForeign%E2%80%AC/photos- keyword (last visited June 18, 2018). |

| Plaintiffs' Genuine Goods | Defendants' Competing Knockoff Goods |
|---|---|
|  Audi's Space Dye Heather Jersey Cap, available at: http://audicollectionusa.com /Product/ACM4475.htm |  Formerly on Defendants' website at: https://trendssociety.com/collections/hats/products/ clubforeign-logo-hat-rings-pick-your-color (last visited 02/15/2018) |
|  Audi's "Flight Jacket – Mens", available at: http://audicollectionusa.com /Product/ACM2494.htm |  Defendant' black flight jackets incorporating the AUDI RINGS® trademark, available at: https://www.facebook.com/search/str/%E2%80% AA%23%E2%80%8EClubForeign%E2%80%AC/photos- keyword (last visited June 19, 2018). |

| Plaintiffs' Genuine Goods | Defendants' Competing Knockoff Goods |
|---|---|
|  Audi's "Four Rings Logo Tee – Mens" available at: http://audicollectionusa.com /Product/ACM3030.htm |  Club Foreign - Germany edition tee, Black, available at: https://paint318.bigcartel.com/product/club-foreign-germany-edition-tee-black (last visited June 19, 2018). |
|  Bentley's "Motorsports Softshell Jacket", viewable online at: https://shop.bentleymotors.com/collections/for-him/products/motorsport-softshell-jacket (last visited June 19, 2018). |  "Club Foreign Jacket Bentley Red", available at: https://vengeance78.com/products/ club-foreign-jacket-bentley-red (last visited June 18, 2018). |

| Plaintiffs' Genuine Goods | Defendants' Competing Knockoff Goods |
|---|---|
|  "Lamborghini Zip-Up Sweatshirt", available at: http://www.lamborghinistore.com/us/ lamborghini-zip-up-sweatshirt.html (last visited June 18, 2018) |  Club Foreign "Italy Jacket" bearing the LAMBORGHINI CHARGING BULL CREST®, viewable online at: https://www.facebook.com/search/str/%E2%80% AA%23%E2%80%8EClubForeign%E2%80%8AC/photos-keyword (last visited June 18, 2018). |
|  "Lamborghini Pilota Ufficiale Zip-Up Sweatshirt", available at: http://www.lamborghinistore.com/us/lamborghini-pilota-ufficiale-zip-up-sweatshirt-9434.html (last visited June 18, 2018). |  Club Foreign racer jacket with the LAMBORGHINI CHARGING BULL CREST® and Lamborghini's stylized font, available at: https://www.facebook.com/trendsSocietyClothing/photos/ a.992397904199447.1073741828.992303737542197/ 1359262560846311/?type=3&theater (last visited June 18, 2018). |

41.     Plaintiffs conducted a test buy of Defendants' products, purchasing them from the website of Jeffersons Apparel, found online at https://jeffersonsapparel.com.

42.     The products arrived from Jeffersons Apparel with a return address of 72 W. Main St., Bergenfield, NJ 07621, not far from Defendants' addresses.  Images depicting these goods are displayed below for reference:



Jeffersons Apparel return address label

Image of package from Jeffersons Apparel



"Club Foreign Germany Windbreaker"



"Italy Series Windbreaker"



Close-up of the Plaintiffs' Marks on the
"Club Foreign Germany Windbreaker" in
combination with Defendants' Club Foreign
mark



Close-up of the Plaintiffs' Marks on the
"Italy Series Windbreaker"



Close-up of the Plaintiffs' Marks on the
"Club Foreign Germany Windbreaker"



Close-up of the Defendants' "Club Foreign"
Marks on the "Italy Series Windbreaker"

43.    Defendants have no affiliation with Plaintiffs of any kind and have not been authorized to identify their counterfeit goods as Plaintiffs products or to use or replicate Plaintiffs' Marks on their products.

44.     Defendants' misappropriation of Plaintiffs' Marks in combination with the manufacture, importation, advertisement, and sale of their unauthorized products bearing Plaintiffs' Marks is likely to cause potential purchasers of Defendants' products, as well as the public at large, to believe that Defendants' products are manufactured or licensed by Plaintiffs.

45.     Defendants' unauthorized misappropriation of Plaintiffs' Marks is also likely to dilute, blur the distinctiveness of, and tarnish Plaintiffs' Marks.

### *Plaintiffs Are Being Irreparably Harmed*

46.     Defendants continue to use Plaintiffs' Marks, and/or intentionally confusingly similar versions thereof, with actual knowledge of Plaintiffs' prior adoption and use of Plaintiffs' Marks.  Defendants have carried out and continue to carry out such acts with the intent to mislead and deceive consumers and the public in general.  In so doing, Defendants have caused irreparable damage to Plaintiffs' Marks and to the goodwill and reputation of Plaintiffs.

47.     Plaintiffs exercise great care and exert substantial effort to control the nature and quality of the genuine goods and services offered under Plaintiffs' Marks.

48.     Defendants are not subject to the exacting quality control specifications and supervision of Plaintiffs, and do not pay royalties to Plaintiffs.

49.     As a direct result of Defendants' actions, Plaintiffs are not able to exercise any quality control over Defendants' non-genuine goods bearing counterfeits of Plaintiffs' Marks, and if the goods are shoddy or the unauthorized manufacturer makes shoddy goods in the future, the public will come to believe that Plaintiffs no longer maintain high standards for their exemplary products, and therefore the reputation and goodwill of Plaintiffs will be harmed.

50.     Based on experience, Plaintiffs are informed and believe that unless this Court enters a preliminary and permanent injunction in this case, Defendants will continue to sell

counterfeit goods bearing Plaintiffs' Marks and will destroy all evidence relating to the manufacture, importation, advertisement, and sale of the counterfeit goods, and disclaim any knowledge of the persons from whom they bought and to whom they sold such counterfeit goods.

51.     As such, Defendants' unlawful conduct constitutes an ongoing irreparable harm to Plaintiffs and Plaintiffs' Marks that will only cease if Defendants are enjoined.

## FIRST CLAIM FOR RELIEF
### (FEDERAL TRADEMARK COUNTERFEITING AND INFRINGEMENT, 15 U.S.C. § 1114)

52.     Plaintiffs reallege and incorporate herein the allegations above.

53.     Despite Plaintiffs' well-known prior rights in Plaintiffs' Marks, Defendants have used and continue to use, without Plaintiffs' authorization, Plaintiffs' Marks, or confusingly similar variations and imitations thereof, in connection with the advertisement, promotion, and sale of Defendants' counterfeit products.

54.     Defendants' misappropriation of Plaintiffs' Marks is likely to cause consumer confusion as to whether Plaintiffs endorse, sponsor, or license Defendants' products, or as to whether Defendants are somehow affiliated with Plaintiffs.

55.     Defendants' actions constitute trademark counterfeiting and willful infringement of Plaintiffs' exclusive rights in Plaintiffs' Marks in violation of 15 U.S.C. § 1114.

56.     Defendants' misappropriation of Plaintiffs' Marks, or confusingly similar variations thereof, has been and continues to be done with the intent to cause confusion, mistake, and to deceive consumers regarding the source and/or sponsorship of Defendants' products. Defendants have used counterfeits of Plaintiffs' Marks in connection with their products with the

knowledge that the marks are counterfeits and with the intent to use counterfeits.  Accordingly, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

57.     As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered irreparable harm to their valuable, distinctive and world-famous Plaintiffs' Marks.   Unless Defendants are restrained from further infringement of Plaintiffs' Marks, Plaintiffs will continue to be irreparably harmed.

58.     Plaintiffs have no adequate remedy at law that will compensate for the continued and irreparable harm it will suffer if Defendants' acts are allowed to continue.

59.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs are entitled to the equitable remedy of an accounting for, and a disgorgement of, all revenues and/or profits wrongfully derived by Defendants from their infringing and diluting use of Plaintiffs' Marks pursuant to 15 U.S.C. § 1117.  Alternatively, Plaintiffs are entitled to statutory damages pursuant to 15 U.S.C. § 1117(c) of not less than $1,000 and up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale, or distributed.

## SECOND CLAIM FOR RELIEF
(FALSE DESIGNATION OF ORIGIN OR SPONSORSHIP
AND FALSE ADVERTISING, 15 U.S.C. § 1125(a))

60.     Plaintiffs reallege and incorporate herein the allegations above.

61.     Defendants have knowingly used Plaintiffs' Marks, or confusingly similar variations thereof, in connection with the products that Defendants manufacture, import, advertise, promote, and/or sell.  Defendants' actions render this case exceptional within the meaning of 15 U.S.C. § 1117(a).

62.     Defendants' misappropriation of Plaintiffs' Marks is likely to confuse, mislead or deceive customers, purchasers, and members of the general public as to the origin, source,

sponsorship, or affiliation of Defendants' services and products, and is likely to cause such people to believe in error that Defendants' products have been authorized, sponsored, approved, endorsed, or licensed by Plaintiffs or that Defendants are in some way affiliated with Plaintiffs.

63.    Defendants' acts constitute false or misleading descriptions, false advertising, and false designations of the origin and/or sponsorship of Defendants' goods in violation of Section 43(a) of the Lanham Act, as amended, 15 U.S.C. § 1125(a).

64.    Because of Defendants' actions, Plaintiffs have suffered irreparable harm to Plaintiffs' Marks.  Unless Defendants are enjoined from their actions, Plaintiffs will continue to be irreparably harmed.

65.    Plaintiffs have no remedy at law that will compensate for the continued and irreparable harm that will be caused if Defendants' acts are allowed to continue.

66.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs are entitled to the equitable remedy of a preliminary injunction, a permanent injunction, an accounting for, and a disgorgement of, all revenues and/or profits wrongfully derived by Defendants from their infringing and diluting use of Plaintiffs' Marks pursuant to 15 U.S.C. § 1117.

### THIRD CLAIM FOR RELIEF
(TRADEMARK DILUTION UNDER 15 U.S.C. § 1125(c))

67.    Plaintiffs reallege and incorporate herein the allegations above.

68.    Plaintiffs' Marks have become famous and distinctive worldwide through Plaintiffs' continuous and exclusive use of them in connection with Plaintiffs' products.

69.    Because Plaintiffs' products have gained a reputation for superior quality, durability, and performance, Plaintiffs' Marks have gained substantial renown.

70.     Defendants have willfully and intentionally used and continue to use Plaintiffs' Marks or confusingly similar variations thereof in connection with the advertisement, promotion, and sale of Defendants' products.

71.     Defendants' misappropriation of Plaintiffs' Marks, and confusingly similar variations thereof, has caused and continues to cause irreparable injury to and actual and/or likelihood of dilution of Plaintiffs' Marks' distinctive quality in violation of Plaintiffs' rights under 15 U.S.C. § 1125(c).   Defendants' wrongful use of Plaintiffs' Marks dilutes, blurs, tarnishes, and whittles away the distinctiveness of Plaintiffs' Marks.

72.     Defendants have used and continue to use Plaintiffs' Marks, and confusingly similar variations thereof, willfully and with the intent to dilute Plaintiffs' Marks, and with the intent to trade on Plaintiffs' reputation and the goodwill inherent in Plaintiffs' Marks.

73.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs have suffered irreparable harm to Plaintiffs' Marks.

74.     Unless Defendants are enjoined, Plaintiffs' Marks will continue to be irreparably harmed and diluted.   Plaintiffs have no adequate remedy at law that will compensate for the continued and irreparable harm they will suffer if Defendants' actions are allowed to continue.

75.     Defendants have used and continue to use Plaintiffs' Marks, or counterfeits thereof, willfully, with the intent to dilute Plaintiffs' Marks and trade on Plaintiffs' reputation and goodwill.   Accordingly, this is an exceptional case within the meaning of 15 U.S.C. § 1111(a).

76.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs are entitled to the equitable remedy of an accounting for, and a disgorgement of, all revenues and/or

profits wrongfully derived by Defendants from their infringing and diluting use of Plaintiffs' Marks pursuant to 15 U.S.C. § 1117.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1.      Under all claims for relief, that a preliminary and permanent injunction be issued enjoining Defendants, their employees, agents, successors and assigns, and all those in active concert and participation with Defendants, and each of them who receives notice directly or otherwise of such injunctions, from:

(a)     imitating, copying, or making unauthorized use of any of Plaintiffs' Marks, counterfeits thereof, or any confusingly similar variations thereof;

(b)     importing, manufacturing, producing, distributing, circulating, selling, offering for sale, advertising, promoting or displaying any service or product using any simulation, reproduction, counterfeit, copy, or any confusingly similar variation of any of Plaintiffs' Marks;

(c)     using any simulation, reproduction, counterfeit, copy or confusingly similar variation of Plaintiffs' Marks in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any service or product;

(d)     using any false designation of origin or false description, including without limitation, any letters or symbols constituting Plaintiffs' Marks or performing any act which can or is likely to lead members of the trade or public to believe that Defendants and/or any service or product manufactured, distributed or sold by Defendants is in any manner associated or connected with Plaintiffs, or is sold, manufactured, licensed, sponsored, approved or authorized by Plaintiffs;

31

(e)     transferring, consigning, selling, shipping or otherwise moving any goods, packaging or other materials in Defendants' possession, custody or control bearing a design or mark substantially similar to any or all of Plaintiffs' Marks;

(f)     engaging in any other activity constituting unfair competition with Plaintiffs with respect to Plaintiffs' Marks, or constituting an infringement of any or all of Plaintiffs' Marks, or of Plaintiffs' rights in, or to use or exploit, any or all of Plaintiffs' Marks; and

(g)     instructing, assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (f) above.

2.     Under all claims for relief, for an order enjoining Defendants from selling, distributing, discarding, giving away or otherwise disposing of Defendants' goods bearing counterfeits of Plaintiffs' Marks, and requiring Defendants to sequester said counterfeit goods, including without limitation, any apparel, accessories or other goods bearing Plaintiffs' Marks as described in this Verified Complaint in a separate and safe location at Defendants' place or places of business, as well as all business records related thereto, including any computers or other digital media containing such business records to be made available for Plaintiffs and their representatives to examine, photograph, and/or copy any such goods and information;

3.     For an order directing Defendants to deliver to Plaintiffs and their counsel for destruction all products, labels, tags, signs, prints, packages, videos, and advertisements in their possession or under their control, bearing or using any or all of Plaintiffs' Marks or any confusingly similar variation thereof, and all plates, molds, matrices and other means of making the same, pursuant to 15 U.S.C. § 1118.

4.     For an order directing such other relief as the Court may deem appropriate to prevent consumers and the public in general from deriving the erroneous impression that any

service or product manufactured, sold or otherwise circulated or promoted by Defendants is authorized by Plaintiffs or related in any way to Plaintiffs' products or services.

5.      For an order directing Defendants to file with the Court and serve upon Plaintiffs' counsel within thirty (30) days after entry of such judgment, a report in writing under oath, setting forth in detail the manner and form in which Defendants have complied with the above.

6.      For an order permitting Plaintiffs, and/or auditors for Plaintiffs, to audit and inspect the books and records of Defendants for a period of six months after entry of final relief in this matter to determine the scope of Defendants' past use of Plaintiffs' Marks, including all revenues and sales related to Defendants' use of Plaintiffs' Marks, as well as Defendants' compliance with orders of this Court.

7.      For an award of Plaintiffs' costs and disbursements incurred in this action, including Plaintiffs' reasonable attorneys' fees under 15 U.S.C. § 1117(a).

8.      For an order requiring Defendants to file with the Court and provide to Plaintiffs an accounting of all sales and profits realized through Defendants' use of Plaintiffs' Marks and any counterfeits thereof.

9.      For judgment in an amount equivalent to three times Defendants' profits and reasonable attorneys' fees because of Defendants' intentional, willful and knowing use of counterfeits of Plaintiffs' Marks pursuant to 15 U.S.C. § 1117(b).

10.     Alternatively, for an award of statutory damages pursuant to 15 U.S.C. § 1117(c) of not less than $1,000 and up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale, or distributed.

11.     For an award of interest, including pre-judgment interest on the foregoing sums.

12.     For such other and further relief as the Court may deem just and proper.

Dated:  September 25, 2018                  s/ Peter J. Torcicollo
        Newark, New Jersey                  Peter J. Torcicollo
                                            J. Brugh Lower
                                            **GIBBONS P.C.**
                                            One Gateway Center
                                            Newark, New Jersey 07102
                                            Tel: (973) 596-4819
                                            Fax: (973) 639-6322
                                            ptorcicollo@gibbonslaw.com
                                            jlower@gibbonslaw.com

                                            Gregory D. Phillips (*pro hac vice* forthcoming)
                                            **PHILLIPS RYTHER & WINCHESTER**
                                            124 S 600 E
                                            Salt Lake City, UT 84102
                                            Tel:  (801) 935-4935
                                            Fax: (801) 935-4936
                                            gdp@prwlawfirm.com

                                            *Attorneys for Plaintiffs*

## **VERIFICATION**

Dana A. Cizmadia, under penalty of perjury of the laws of the United States declares:

That she is employed by Volkswagen Group of America, Inc as Brand Protection and Marketing Compliance Specialist; that she has read, is familiar with, and has personal knowledge of the contents of the foregoing Verified Complaint; and that the allegations thereof are true and correct or, to the extent that matters are not within her personal knowledge, that the facts stated therein have been assembled by authorized personnel, including counsel, and that she is informed that the facts stated therein are true and correct.

Executed this 25th day of September 2018 in Herndon, Virginia.

Dana A. Cizmadia

35