UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| AUDI AG; BENTLEY MOTORS LIMITED; AUTOMOBILI LAMBORGHINI S.P.A.; and VOLKSWAGEN GROUP OF AMERICA, INC., <br><br> *Plaintiffs*, <br><br> v. <br><br> POSH CLOTHING, LLC d/b/a CLUB FOREIGN, TRENDS SOCIETY, and TRENDSSOCIETY.COM; PASHA BORSUK; and NICKWON ARVINGER, <br><br> *Defendants*. | Civil Action No. 18-14254 <br><br> **OPINION** |

**John Michael Vazquez, U.S.D.J.**

This matter comes before the Court on an unopposed motion for default judgment pursuant to Fed. R. Civ. P. 55(b)(2) by Plaintiffs Audi AG ("Audi"); Bentley Motors Limited ("Bentley"); Automobili Lamborghini S.P.A. ("Lamborghini"); and Volkswagen Group Of America, Inc. ("Volkswagen") against Defendants Posh Clothing, LLC d/b/a Club Foreign, Trends Society, and trendssociety.com ("Posh"); and Pasha Borsuk.[1] D.E. 13. The Court reviewed all submissions made in support of the motion and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Plaintiffs' motion is granted.

---

[1] Plaintiffs agreed to vacate the motion for default judgment as to Defendant Nickwon Arvinger. D.E. 18. Therefore, for purposes of this motion, when the Court refers to Defendants, the Court is referring to all Defendants besides Arvinger.

## I. INTRODUCTION[2]

Plaintiffs allege that Defendants "operate a counterfeiting ring that imports, promotes, advertises, distributes, and/or sells apparel and personal accessories bearing counterfeits of Plaintiffs' world-famous trademarks." Compl. ¶ 2. Plaintiffs filed their Complaint against Defendants on September 25, 2018, alleging three causes of action: (I) federal trademark counterfeiting and infringement under 15 U.S.C. § 1114; (II) false designation of origin or sponsorship and false advertising under 15 U.S.C. § 1125(a); and (III) trademark dilution under 15 U.S.C. § 1125(c). Compl. ¶¶ 52-76. Defendants failed to respond, and the clerk of court entered default on November 20, 2018. Plaintiffs moved for default judgment on December 28, 2018 and submitted a brief in support. D.E. 13-1 ("Pl. Br."). Plaintiffs then agreed to vacate the motion for default judgment as to Defendant Arvinger only.[3] D.E. 18. Plaintiffs' pending motion for default judgment is solely against Defendants Posh and Borsuk.

Federal Rule of Civil Procedure 55 allows for the entry of default against a party that fails to plead or otherwise defend against claims. Fed. R. Civ. P. 55. "The entry of a default judgment is largely a matter of judicial discretion, although the Third Circuit has emphasized that such 'discretion is not without limits, . . . and [has] repeatedly state[d] [its] preference that cases be disposed of on the merits whenever practicable.'" *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir.1984)).

---

[2] The Court derives the facts from Plaintiff's Complaint, D.E. 1 ("Compl."), as well as the affidavits and exhibits submitted in conjunction with Plaintiffs' motion for default judgment, D.E. 13. *See Trustees of the Teamsters Pension Trust Fund of Phila. & Vicinity v. Riccelli Premium Produce, Inc.*, 2011 WL 1114175, at *1 (D.N.J. Mar. 23, 2011).

[3] Defendant Arvinger then answered Plaintiffs' Complaint on March 4, 2019. D.E. 19.

In entering a default judgment, a court must determine whether (1) it has personal and subject matter jurisdiction; (2) the defendants were properly served; (3) the complaint sufficiently pleads a cause of action; and (4) the plaintiff has proven damages. *Days Inns Worldwide, Inc. v. Jinisha Inc.*, 2015 WL 4508413, at *1 (D.N.J. July 24, 2015). Additionally, a court must determine the appropriateness of default judgment by weighing (1) the prejudice suffered by the party seeking default judgment; (2) whether the party subject to the default has a meritorious defense; and (3) the culpability of the party subject to default. *Id.* at *2.

## II. ANALYSIS

Jurisdiction

When a default judgment is sought against a party that has not filed responsive pleadings, the court "has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *Ramada Worldwide Inc. v. Benton Harbor Hari Ohm, L.L.C.*, 2008 WL 2967067, at *9 (D.N.J. July 31, 2008) (quoting *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986)). The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331. Section 1331 provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Plaintiffs bring claims under Sections 32(1), 43(a), and 43(c) of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), and 1125(c), respectively. Compl. ¶ 12. In addition, Section 39 of the Lanham Act, 15 U.S.C. § 1121(a), explicitly provides that district courts "shall have original jurisdiction . . . of all actions arising under this chapter, without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties." The Court has subject matter jurisdiction over the matter.

The Court also has personal jurisdiction over Defendants. "[A]n individual's domicile, or home, constitutes the paradigmatic forum for the exercise of general jurisdiction." *Chanel, Inc. v.*

3

*Matos*, 133 F. Supp. 3d 678, 684 (D.N.J. 2015) (internal quotation marks omitted). An individual's domicile is the state that is his or her "home." *JWQ Cabinetry, Inc. v. Granada Wood & Cabinets, Inc.*, 2014 WL 2050267, at *3 (D.N.J. May 19, 2014). Here, Defendant Borsuk resides in or near Springfield, New Jersey. Compl. ¶ 9. Because New Jersey is Borsuk's "home," this Court retains personal jurisdiction over him.

With respect to a company, "the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction." *Daimler AG v. Bauman*, 134 S. Ct. 746, 760, 187 L. Ed. 2d 624 (2014) (internal quotation and citation omitted) (alteration in original). Here, Defendant Posh is a New Jersey LLC with its principal place of business located in Springfield, New Jersey. Compl. ¶ 8. Because New Jersey is Posh's "home," this Court retains personal jurisdiction over it. The Court has subject matter and personal jurisdiction over the matter.

Service

"Before the Court can enter default judgment, it must find that process was properly served on the Defendant[s]." *Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.*, No.11-624, 2011 WL 4729023, at *2 (D.N.J. Oct. 5, 2011) (citing *Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 19 (3d Cir. 1985)). Borsuk, an individual, may be served by:

(1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

(2) doing any of the following:

    (A) delivering a copy of the summons and of the complaint to the individual personally;

    (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

4

> (C) delivering a copy of each to an agent authorized by appointment
> or by law to receive service of process.

Fed. R. Civ. P. 4(e). On October 20, 2018, a process server left copies of the summons and Complaint with exhibits at Borsuk's dwelling or usual place of abode in Springfield, New Jersey, with a woman of suitable age and discretion who resided therein. D.E. 10. Therefore, the Court finds that service of the summons and Complaint was proper as to Borsuk.

As a limited liability company, Defendant Posh may be properly served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . . ." Fed. R. Civ. P. 4(h)(1)(B). Here, on October 20, 2018, a process server left a copy of the summons and Complaint with exhibits for Pasha Borsuk, an officer and agent of Posh, at the individual's dwelling or usual place of abode in Springfield, New Jersey, with a woman of suitable age and discretion who resided therein. D.E. 9. Therefore, the Court finds that service of the summons and Complaint was also proper as to Posh.

Sufficient Cause of Action

Next, "the Court must decide whether 'the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'" *Primo No. One in Produce, Inc. v. VG Sales LLC*, No. 16-1395, 2017 WL 202169, at *2 (D.N.J. Jan. 18, 2017) (quoting *Chanel*, 558 F. Supp. 2d at 535). In doing so, the Court must accept all well-pleaded factual allegations in the pleadings as true, except as to damages. *Chanel*, 558 F. Supp. 2d at 535-36. Plaintiffs bring three causes of action: (I) federal trademark counterfeiting and infringement under 15 U.S.C. § 1114; (II) false designation of origin or sponsorship and false advertising under 15 U.S.C. § 1125(a); and (III) trademark dilution under 15 U.S.C. § 1125(c). Compl. ¶¶ 52-76.

First, "[f]ederal trademark infringement, 15 U.S.C. § 1114(1)(a), and a false designation of origin claim, 15 U.S.C. § 1125(a)(1)(A), are measured by identical standards pursuant to the Lanham Act." *Chanel*, 558 F. Supp. 2d at 536 (citing *A & H Sportswear, Inc. v. Victoria's Secret Stores*, Inc., 237 F.3d 198, 210 (3d Cir. 2000)). "To establish either Lanham Act claim, the record must demonstrate that plaintiff (1) has a valid and legally protectable mark; (2) owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion." *Id.* (citing *A & H Sportswear*, 237 F.3d at 210). "The first two requirements are satisfied when a federally registered mark has become incontestable," which means that "the owner has filed affidavits stating that the mark has been registered, that it has been in continuous use for five consecutive years, and that there has been no adverse decision concerning the registrant's ownership or right to registration." *Id.* (citing *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466 (3d Cir. 1994)).

Here, Plaintiffs have demonstrated that they own the following valid and legally protectable apparel-related registered trademarks: AUDI STYLIZED® (U.S. Reg. No. 1,416,583) (covering jackets and hats); AUDI RINGS® (U.S. Reg. No. 3,007,305) (covering caps, sweatshirts, t-shirts, and jackets); AUDI RINGS® (U.S. Reg. No. 2,987,328) (covering shirts and jackets); AUDI SPORT® (U.S. Reg. No. 5,174,144) (covering t-shirts, pajamas, trousers, and jackets); AUDI S® (U.S. Reg. No. 4,405,143) (covering t-shirts, shirts, polo shirts, jackets, caps and hats); B IN WINGS® (U.S. Reg. No. 5,121,498) (covering jackets); AUTOMOBILII LAMBORGHINI CHARGING BULL CREST® (U.S. Reg. No. 3,717,346) (covering jackets). Compl. ¶¶ 17-21, 25-26, 30-31. Plaintiffs have also demonstrated that Defendants have offered for sale several goods displaying these exact marks without permission, likely causing consumer

confusion. *Id.* ¶¶ 39-45. Therefore, Plaintiffs have sufficiently plead a claim for false designation of origin and trademark infringement.

Second, "[t]o establish federal trademark counterfeiting, the record must establish that (1) defendants infringed a registered trademark in violation of the Lanham Act, 15 U.S.C. § 1114(1)(a), and (2) intentionally used the trademark knowing that it was counterfeit or was willfully blind to such use." *Id.* "Counterfeit" has generally been defined as "a product with a sham trademark that is an intentional and calculated reproduction of the genuine trademark." *Id.* at 536 n.2; *see also* 15 U.S.C. § 1116(d)(1)(B)(i). "The only distinction between the standard for federal trademark counterfeiting and the standard for establishing infringement is that to obtain treble or statutory damages for a counterfeiting claim, a plaintiff must show that the defendant intentionally used the plaintiff's trademark, knowing that it was a counterfeit." *Id.*; *see also* 15 U.S.C. § 1117.

Here, Plaintiffs sufficiently demonstrated that Defendants intentionally used Plaintiffs' trademarks to sell knowingly counterfeit merchandise. On March 18, 2017, Defendants' counsel emailed Audi requesting information regarding the application process for obtaining a license to use Audi's marks. *Id.* ¶ 35. Audi responded with a questionnaire to begin the licensing process. *Id.* The parties never completed the process and Audi did not grant Defendants a license. *Id.* Nevertheless, Defendants then sold products displaying Plaintiffs' exact marks, representing that they were genuine. *Id.* ¶¶ 2, 40. Plaintiffs then sent Defendants a cease and desist letter informing Defendants of their infringement on February 26, 2018. *Id.* ¶ 36. Plaintiffs contacted Defendant Borsuk on May 21, 2018 regarding the infringing goods displayed on his website and social media pages. *Id.* ¶ 39. Borsuk denied that his goods were branded with counterfeits and claimed that all images were merely of samples and not for sale. *Id.* ¶ 39. Plaintiffs then conducted a "test buy"

of Defendants' apparel and successfully purchased goods displaying Plaintiffs' identical marks without permission. *Id.* ¶¶ 41-42. The Court finds that given these facts, Defendants intentionally used Plaintiffs' trademarks to sell knowingly counterfeit merchandise. Plaintiffs have sufficiently stated a claim for trademark counterfeiting.

Third, "[t]he federal cause of action for trademark dilution grants extra protection to strong, well-recognized marks even in the absence of a likelihood of consumer confusion—the classical test for trademark infringement—if the defendant's use diminishes or dilutes the strong identification value associated with the plaintiff's famous mark." *Times Mirror Magazines, Inc. v. Las Vegas Sports News, L.L.C.*, 212 F.3d 157, 163 (3d Cir. 2000); *see also* 15 U.S.C. § 1125(c)(1). A trademark dilution claim has the following elements: (1) "plaintiff is the owner of a mark that qualifies as a 'famous' mark in light of the totality of the eight factors listed in § 1125(c)(1),"[4] (2) "defendant is making commercial use in interstate commerce of a mark or trade name," (3) "[d]efendant's use began after the plaintiff's mark became famous," and (4) "[d]efendant's use

---

[4] The eight factors are as follows:

> (A) the degree of inherent or acquired distinctiveness of the mark;
> (B) the duration and extent of use of the mark in connection with the goods or services with which the mark is used;
> (C) the duration and extent of advertising and publicity of the mark;
> (D) the geographical extent of the trading are a in which the mark is used;
> (E) the channels of trade for the goods and services with which the mark is used;
> (F) the degree of recognition of the mark in the trading areas and channels of trade used by the marks' owner and the person against whom the injunction is sought;
> (G) the nature and extent of use of the same or similar marks by third parties; and
> (H) whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

*Id.* (quoting 15 U.S.C. § 1125(c)(1)(A)-(H)).

causes dilution by lessening the capacity of the plaintiff's mark to identify and distinguish goods or services." *Id.*

Here, Plaintiffs' marks are famous. These are the marks of established, globally-recognizable automotive brands. Compl. ¶¶ 4-7, 68. They have become distinctive over time, dating back to 1960 (Audi), 1937 (Bentley), and 1975 (Lamborghini). *Id.* ¶¶ 15, 23, 28. Plaintiffs have each spent "hundreds of millions of dollars and expended significant effort in advertising, promoting, and developing their trademarks throughout the world." *Id.* ¶ 33. It appears that these efforts have been effective. The Court finds that Plaintiff sufficiently established that these marks are in fact "famous" for purposes of trademark dilution.

Defendants are offering for sale goods with these marks via the Internet. *Id.* ¶¶ 2, 40-45. In doing so, Defendants are making commercial use of these marks in interstate commerce. *See United States v. MacEwan*, 445 F.3d 237, 245 (3d Cir. 2006) ("the Internet is an instrumentality and channel of interstate commerce"). It appears that Defendants' practice began after these marks became famous, given the historical prevalence of these marks and Defendants' relatively recent interest in obtaining a license to use them (March 18, 2017). *Id.* ¶ 35. Finally, because Defendants are using Plaintiffs' exact marks without permission, they are lessening consumers' ability to distinguish between the real and counterfeit items. *Id.* ¶ 70. Plaintiffs have sufficiently stated a claim for trademark dilution.

Relief

Here, Plaintiffs seeks the following relief: (1) a permanent injunction, (2) statutory damages, and (2) attorneys fees and costs. Pl. Br. at 22-30.

First, a plaintiff must demonstrate the following to obtain a permanent injunction:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to

9

> compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). As for the first and second element, "[g]rounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill." *S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 378 (3d Cir. 1992). Loss of goodwill is "often difficult to quantify," therefore making money damages inadequate to compensate for such injury. *Janssen Prod., L.P. v. Lupin Ltd.*, 109 F. Supp. 3d 650, 696 (D.N.J. 2014), *modified on other grounds*, No. 10-5954, 2016 WL 1029269 (D.N.J. Mar. 15, 2016). Further, "trademark infringement amounts to irreparable injury as a matter of law." *S & R Corp.*, 968 F.2d at 378. As to the third element, self-inflicted harm typically does not outweigh the immeasurable damage done by trademark infringement. *Id.* at 379. As to the fourth element, "[i]n a trademark case, the public interest is most often a synonym for the right of the public not to be deceived or confused." *Id.* (internal quotations omitted).

Here, Defendants are infringing on Plaintiffs' trademarks and causing a loss in goodwill. This amounts to irreparable injury, and the Court has already determined success on the merits as to the substantive claims. In balancing the harms, any harm to Defendants is self-inflicted, as Defendants' goods are counterfeit and otherwise in violation of the Lanham Act. Therefore, this harm does not outweigh Plaintiff's legitimate harm of lost sales and goodwill. Additionally, a permanent injunction benefits the public because it inhibits Defendants' ability to deceive or confuse consumers into believing that Defendants' products are associated with Plaintiffs' marks. The Court finds that a permanent injunction is appropriate. The Court orders a permanent injunction as described in the attached Order.

Second, Plaintiffs seek statutory damages pursuant to 15 U.S.C. § 1117(c). Pl. Br. at 25-29. While the factual allegations of the complaint "will be taken as true," the amount of damages must still be proven. *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (citation omitted). Section 1117(c) provides as follows:

> In a case involving the use of a counterfeit mark . . . in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect . . . to recover, instead of actual damages and profits . . . an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of--
>
> (1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
>
> (2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c)(1)-(2).[5] Here, Defendants' conduct constitutes a willful use of counterfeit marks. As explained above, the marks are counterfeit. Further, Defendants (1) inquired into obtaining a license from Audi but never completed the process, (2) received a cease and desist letter, and then (3) incorrectly represented that their goods were samples and not for sale. Compl. ¶¶ 35, 36, 39. Defendants were aware that they needed a license to sell merchandise with Plaintiffs'

---

[5] The statute provides for statutory damages because actual damages, such as a counterfeiter's profits, are often unavailable. *See Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 110 (2d Cir. 2012) (noting that in adding statutory damages, "Congress appears to have been motivated by a gap in the law: Plaintiffs who were victorious on their civil counterfeiting claims were often unable to obtain an adequate recovery in actual damages because counterfeiters often maintain sparse business records, if any at all." (citing S. Rep. 104-177, at 10 (1995)). This is applicable here; since Defendants failed to respond to Plaintiffs' Complaint, the Court is unable to determine Plaintiffs' profits from the counterfeiting operation.

trademarks and willfully decided to do so without one. Thus, the statutory maximum for Defendants' conduct is $2,000,000 per counterfeit mark per type of good sold.

Here, Plaintiffs have exhibited at least three different types of counterfeit goods sold by Defendants: jackets, hats, and shirts. Compl. ¶ 2. The jackets display at least four different counterfeit marks (two Audi marks, one Lamborghini mark, and one Bentley mark). *Id.* The hats display at least one counterfeit mark (an Audi mark). *Id.* The shirts display at least one counterfeit mark (an Audi mark). Therefore, the statutory damages maximum is $12,000,000.

Plaintiffs have requested a total of $3,000,000 in statutory damages – $1,000,000 for each general company mark infringed upon (Audi, Bentley, Lamborghini). Pl. Br. at 28-29. Section 1117(c) "does not provide guidelines for courts to use in determining an appropriate award" aside from these general minimums and maximums. *Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 583 (E.D. Pa. 2002), *amended* (June 28, 2002). "In the absence of clear guidelines for setting a statutory damage award, courts have tended to use their wide discretion to compensate plaintiffs, as well as to deter and punish defendants, often borrowing from factors developed in fixing a statutory damage award for copyright infringement." *Id.* "In analyzing the appropriate statutory award for copyright infringement cases, courts consider the defendant's profits, as well as saved expenses, the plaintiff's lost revenues, and the defendant's state of mind." *Id.* at 584.

Here, the Court finds $3,000,000 in statutory damages to be appropriate. As noted, the Court is unable to determine Defendants' profits and saved expenses, or Plaintiffs' lost revenues, because Defendants failed to respond. However, Defendants' state of mind supports a significant award of damages given that this conduct appears to be brazen and willful. The Court finds that Plaintiffs' request is appropriate in light of the statutory maximum and circumstances alleged. Courts in this district have awarded comparable sums in similar circumstances. *See Chanel, Inc.*

*v. Gordashevsky*, 558 F. Supp. 2d 532, 538 (D.N.J. 2008) (awarding $2,238,624.50 in statutory damages for counterfeit handbags, wallets, sunglasses, jewelry, and scarves); *see also Louis Vuitton Malletier, S.A. v. Joseph Mosseri*, No. 07-2620 (Oct. 28, 2009 Order) (awarding $3,780,000 in statutory damages for counterfeit handbags, wallets, and key chains). Plaintiffs are awarded $3,000,000 in statutory damages pursuant to Section 1117(c)(2).

Third, Plaintiffs seek attorneys' fees and costs pursuant to 15 U.S.C. § 1117(a). Pl. Br. at 29-30. Section 1117(a) allows for attorneys' fees "in exceptional cases." 15 U.S.C. § 1117(a). "While the statute does not explicitly define the term 'exceptional,' generally a trademark case is exceptional for purposes of an award of attorneys' fees when the infringement is malicious, fraudulent, deliberate or willful." *Louis Vuitton*, 211 F. Supp. 2d at 585 (citing *Securacomm Consulting, Inc. v. Securacom Inc.*, 224 F.3d 273, 280 (3d Cir. 2000)). Here, since the Court already found Defendants' conduct to be willful, the Court concludes that Plaintiffs are entitled to attorneys' fees and costs. *See id.* ("Having concluded that the Defendants' conduct was willful, I conclude that the Plaintiffs are entitled to attorneys' fees and costs."). The Court grants Plaintiffs' request for leave to file a certification regarding the total amount of their attorneys' fees and costs within fourteen (14) days of the entry of this Opinion and accompanying Order.

Default Judgment Factors

Before imposing the extreme sanction of default judgment, district courts must determine the appropriateness of default judgment by weighing "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)).

Here, all three factors weigh in favor of entering a default judgment for Plaintiffs. First, considering that Defendants have not responded to this matter, "Defendant[s] ha[ve] put forth no evidence or facts containing any information that could provide the basis for a meritorious defense." *HICA Educ. Loan Corp. v. Surikov*, No. 14-1045, 2015 WL 273656, at *3 (D.N.J. Jan. 22, 2015). As discussed above, accepting the allegations in the Complaint as true, Plaintiffs have successfully stated claims for relief against Defendants. Second, Plaintiffs would be unfairly prejudiced if no default judgment is entered because they could lose profits and goodwill, as discussed above. Third, Defendants' failure to answer, without providing any reasonable explanation, permits the court to draw an inference of culpability. *Int'l Union of Painters v. Andrews Window Servs. LLC*, No. 15-3583, 2016 WL 3234516, at *3 (D.N.J. June 7, 2016) (citing *Slover v. Live Universe, Inc.*, No. 08-2645, 2009 WL 606133, at *2 (D.N.J. Mar. 9, 2009)). Here, "there is nothing before the Court to show that the Defendant[s'] failure to file an answer was not willfully negligent." *Teamsters Pension Fund of Philadelphia & Vicinity*, 2011 WL 4729023, at *1 (citing *Prudential Ins. Co. of America v. Taylor*, 2009 WL 536403 at *1 (D.N.J. February 27, 2009)). The Court finds that default judgment is warranted.

## III. CONCLUSION

For the reasons stated above, Plaintiffs' motion for default judgment (D.E. 13) is granted. The Court orders a permanent injunction as described in the attached Order. The Court awards Plaintiffs $3,000,000 in statutory damages. The Court finds that Plaintiffs are entitled to reasonable attorneys' fees and costs. An appropriate Order accompanies this Opinion.

Dated: May 2, 2019

*[signature]*
John Michael Vazquez, U.S.D.J.